**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION**

| | | |
|---|---|---|
| DON YORK, BEVERLY YORK, JACOB STRADLING, ALISHA YORK-STRADLING, JACK HARVEY, and JUDY HARVEY, individually and on behalf of all others similarly situated, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 6:21-cv-03251-BP |
| v. | ) ) | **ORAL ARGUMENT REQUESTED FOR RECENT LAW SCHOOL GRADUATE** |
| NORTHROP GRUMMAN GUIDANCE AND ELECTRONICS COMPANY, INC., NORTHROP GRUMMAN CORPORATION, and NORTHROP GRUMMAN MISSION SYSTEMS, | ) ) ) ) ) | |
| Defendants. | ) ) ) | |

**DEFENDANTS NORTHROP GRUMMAN GUIDANCE AND ELECTRONICS
COMPANY, INC., NORTHROP GRUMMAN CORPORATION, AND NORTHROP
GRUMMAN MISSION SYSTEMS' SUGGESTIONS IN SUPPORT OF THEIR
<u>MOTION TO DISMISS THE FIRST AMENDED COMPLAINT</u>**

**TABLE OF CONTENTS**

Page

INTRODUCTION AND SUMMARY OF ARGUMENT ............................................................ 1

FACTUAL ALLEGATIONS AND JUDICIALLY NOTICEABLE FACTS ............................... 2

LEGAL STANDARD ............................................................................................................ 4

ARGUMENT ....................................................................................................................... 5

    I.    Federal Law Preempts Plaintiffs' State Law Tort Claims ....................................... 5

        A.    Numerous Courts Have Held that State Law Claims are Preempted if they Challenge a CERCLA Consent Decree ................................................. 5

        B.    Federal Law Preempts Plaintiffs' Claims for Injunctive Relief ................... 9

        C.    Federal Law Preempts Plaintiffs' Claims for Money Damages ................ 11

    II.    Plaintiffs' Request for an Injunction Lacks Sufficient Specificity ........................ 14

    III.    "Preliminary and Permanent Injunction" Is Not a Standalone Claim .................... 15

CONCLUSION ................................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

C<small>ASES</small>

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..............................................................................4, 5

*Atl. Richfield Co. v. Christian*,
   140 S. Ct. 1335 (2020)...............................................................................6

*Bartlett v. Honeywell Int'l, Inc.*,
   260 F. Supp. 3d 231 (N.D.N.Y. 2017).................................... *passim*

*Bartlett v. Honeywell Int'l, Inc.*,
   737 F. App'x 543 (2d Cir. 2018) ...............................................2, 10, 14

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)....................................................................................5

*Cavallo v. Star Enter.*,
   100 F.3d 1150 (4th Cir. 1996) ..................................................................7

*In re Cerner Corp. Sec. Litig.*,
   425 F.3d 1079 (8th Cir. 2005) ..................................................................5

*Coastline Terminals of Conn., Inc. v. USX Corp.*,
   156 F. Supp. 2d 203 (D. Conn. 2001)......................................................7

*Cook v. ACS State & Local Sols., Inc.*,
   663 F.3d 989 (8th Cir. 2011) ....................................................................4

*Meyer ex rel. Coplin v. Fluor Corp.*,
   220 S.W.3d 712 (Mo. 2007) ...................................................................13

*Feikema v. Texaco, Inc.*,
   16 F.3d 1408 (4th Cir. 1994) ..............................................................7, 11

*Freightliner Corp. v. Myrick*,
   514 U.S. 280 (1995)....................................................................................6

*Henke v. Arco Midcon, LLC*,
   750 F. Supp. 2d 1052 (E.D. Mo. 2010)..................................................15

*In re Acushnet River & New Bedford Harbor Procs. re Alleged PCB Pollution*,
   712 F. Supp. 1019 (D. Mass. 1989) .........................................................6

*Jackson County, Mo. v. MERSCORP, Inc.*,
   915 F. Supp. 2d 1064 (W.D. Mo. 2013) ................................................15

**Page(s)**

*Mehlar Corp. v. City of St. Louis, Mo.*,
530 F. Supp. 85 (E.D. Mo. 1981).................................................................3

*New Mexico v. Gen. Elec. Co.*,
467 F.3d 1223 (10th Cir. 2006) .............................................................7, 14

*Parker v. Chase Home Fin., LLC*,
2011 WL 4972328 (W.D. Mo. Oct. 19, 2011)..........................................14

*Salerno v. City of Niagara Falls*,
No. 1:18-CV-304, 2020 WL 5814406 (W.D.N.Y. Sept. 30, 2020)....................8, 14

*State of N.J., Dep't of Env't Prot. v. Gloucester Env't Mgmt. Servs., Inc.*,
No. CIV. 84-0152JBS, 2005 WL 1129763 (D.N.J. May 11, 2005) .........................6

*Town of Halfmoon v. Gen. Elec. Co.*,
105 F. Supp. 3d 202 (N.D.N.Y. 2015).....................................................7, 14

*Union Ctr. Redevelopment Corp. v. Nat'l R.R. Passenger Corp.*,
103 F.3d 62 (8th Cir. 1997) .......................................................................6

*Zean v. Fairview Health Servs.*,
858 F.3d 520 (8th Cir. 2017) ....................................................................3

**STATUTES**

42 U.S.C. § 9607 (CERCLA § 107).................................................................3

42 U.S.C. § 9613................................................................................7

42 U.S.C. § 9617...............................................................................13

42 U.S.C. § 9622 (CERCLA § 122) ........................................................ *passim*

**RULES**

Fed. R. Civ. P. 8................................................................................5

Fed. R. Civ P. 12.......................................................................1, 2, 4, 15

**REGULATIONS**

40 C.F.R. § 300.430..............................................................................4

## INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiffs claim that contamination from a former Litton manufacturing facility in Springfield, Missouri spread to the groundwater beneath their properties, and they filed this putative class action lawsuit. For decades, state authorities acting under both federal and state law have overseen a highly public and extensive investigation and cleanup of the Litton Site and surrounding community, most recently resulting in a 2011 consent decree entered in the Southern Division of the Western District of Missouri—this same court ("Consent Decree"). Plaintiffs are nearby residents claiming that the federally ordered remediation is insufficient and seeking relief due to alleged deficiencies in the ordered and approved remediation. Based on various state law tort theories, Plaintiffs seek to recover money damages, an injunction compelling further cleanup of the Litton Site, including the surrounding community, and medical monitoring. The Court should dismiss the Amended Complaint, in whole, with prejudice, under Rule 12(b)(6) based on the defects discussed below.

Plaintiffs' claims are preempted as a matter of law because they seek to use state tort law to challenge Defendants' (collectively "Northrop Grumman") actions taken under the direct supervision of Missouri state authorities pursuant to a binding federal Consent Decree. Northrop Grumman acquired the Litton Site in 2001, and the State of Missouri filed suit against Northrop Grumman under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), relating to contamination at the Litton Site. The parties settled that suit in the 2011 Consent Decree. Under CERCLA, once a party undertakes a cleanup pursuant to a consent decree, that party *cannot* perform any "remedial action" on the site—whether required by state law or otherwise—unless such action has "been authorized" by the responsible agency. 42 U.S.C. § 9622(e)(6). Given the scope of the 2011 Consent Decree—which expressly applies to both on-site and off-site cleanup and remediation activities—this Court cannot award injunctive relief

based on state tort law because it would directly conflict with Northrop Grumman's obligations under CERCLA or, at a minimum, would be an obstacle to accomplishing CERCLA's intended purpose to encourage and promote settlements. In addition, because "plaintiffs' claims merely allege activity that is consistent with a consent decree," all of Plaintiffs' claims, including "injunctive relief or monetary damages" are also preempted. *Bartlett v. Honeywell Int'l, Inc.*, 260 F. Supp. 3d 231, 243 (N.D.N.Y. 2017), *aff'd*, 737 F. App'x 543 (2d Cir. 2018). In short, the cleanup of the Litton site has been entrusted to "expert supervising government agencies acting within their statutory authority," thereby preempting Plaintiffs' attempt to challenge or modify that cleanup through state tort claims, which "would pose an obstacle to the accomplishment and execution of Congress's full purposes and objectives." *Bartlett v. Honeywell Int'l, Inc.*, 737 F. App'x 543, 550–51 (2d Cir. 2018), *cert denied*.

Plaintiffs' Amended Complaint also suffers from other defects that require dismissal: First, Plaintiffs' injunction request lacks any factual specificity as to what relief is actually sought. Second, the Amended Complaint also purports to state a claim for injunctive relief even though that is not a standalone claim under Missouri law.

The 2011 Consent Decree issued by this Court grants supervision over the Litton site cleanup to the responsible state agency, which has the requisite expertise and decades of on-site experience. Plaintiffs' Amended Complaint invokes state law tort remedies in a way that would frustrate the cleanup and circumvent the responsible Missouri agency's judgment. The Court should dismiss the Amended Complaint under Rule 12(b)(6) as discussed below.

## FACTUAL ALLEGATIONS AND JUDICIALLY NOTICEABLE FACTS

Plaintiffs seek damages and injunctive relief for soil and groundwater contamination they allege originated at a former manufacturing facility operated by Litton Systems, Inc. ("Litton") in Springfield, Missouri, beginning in the 1960s (the "Litton Site"), that Northrop Grumman acquired

in 2001. Doc. 20 ("FAC") ¶¶ 3, 15, 29. The primary contaminant at issue is trichloroethylene ("TCE"), an industrial solvent Litton allegedly used to clean circuit boards. *Id.* ¶¶ 31–32. Plaintiffs claim Northrop Grumman's Site remediation allowed TCE "seepage" over time, causing contamination that they claim has now migrated in the groundwater beneath their properties, allegedly impacting their private well water. *Id.* ¶¶ 6, 36. Plaintiffs allege Northrop Grumman is responsible for failing to fully remediate the TCE contamination and timely notify the community of the extent of the contamination. *Id.* ¶¶ 6, 65.

The Litton Site is currently subject to a 2011 Consent Decree entered in the Southern Division of the Western District of Missouri between Northrop Grumman and the Missouri Department of Natural Resources ("MDNR") that sets forth the scope of Northrop Grumman's remedial work pursuant to federal requirements. *Id.* ¶¶ 42, 116. The Court may properly consider the 2011 Consent Decree and the associated Scope of Work, which describes Northrop Grumman's required remedial actions, because they are repeatedly referenced in the Amended Complaint and are also subject to judicial notice.[1] *See id.* ¶ 116. The 2011 Consent Decree was issued pursuant to CERCLA § 107, 42 U.S.C. § 9607, and details the prior history of remediation at the Litton Site under MDNR's supervision. Ex. 1 (2011 Consent Decree) at 3, 8.

- In the late 1970s and early 1980s, MDNR oversaw certain closure activities, including "removal of sludge and fluid, some soil excavation and backfilling with clean fill." *Id.* at 4.

- In the 1990s, Litton "conducted a Phase I Remedial Investigation, a Phase II Remedial Investigation, and a Bedrock Investigation" which collectively included "groundwater monitoring well installation [and] groundwater sampling." *Id.*

---

[1] The Court may consider "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned." *Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017). In addition, the Court may take judicial notice of the Consent Decree. *See, e.g.*, *Mehlar Corp. v. City of St. Louis, Mo.*, 530 F. Supp. 85, 86 (E.D. Mo. 1981) (judicial notice of state court order, judgment, and decree).

- In 1995, Litton installed extraction wells as part of the Interim Remedial Measure, "in an effort to remove contaminated groundwater." *Id*. at 5.

- In 2003, after acquiring the Litton Site, Northrop Grumman "commenced an additional Remedial Investigation and Feasibility Study . . . pursuant to 40 C.F.R. § 300.430." *Id*.

- In 2005, MDNR approved a Phase II Remedial Investigation Report, a Phase II Feasibility Study, and a Phase III Remedial Investigation Work Plan. *Id*.

- In 2006, Northrop Grumman "***performed the work as outlined in the Phase III*** [Remedial Investigation] Work Plan." *Id*. at 6 (emphasis added).

- In 2008 and 2009, Northrop Grumman performed MDNR-approved remediation, including installing an Electrical Resistive Heating (ERH) soil remediation system. *Id*. at 6–7.

The 2011 Consent Decree dictates that going forward, Northrop will perform response and remedial actions both on- and off-site consistent with the federal Environmental Protection Agency ("EPA") regulations promulgated pursuant to CERCLA, along with MDNR oversight as described in the Scope of Work attached to the Consent Decree. *Id*. at 7–8, 31. The Scope of Work details future remedial activities to be taken at the Litton Site subject to MDNR oversight, and states its purpose is to set forth requirements for "remedial action" both on-site and off-site (i.e., into the surrounding community), as necessary. Ex. 2 (Scope of Work) at 1. The 2011 Consent Decree grants MDNR and EPA extensive rights to supervise and oversee the cleanup, including allowing MDNR open access to the Litton Site. Ex. 1 at 23–24, 33. Further, regarding work performed off-site, Northrop Grumman is to obtain access to properties affected by the contamination in the surrounding community for both MDNR and EPA to monitor the work, obtain samples, assess the need for "additional response actions at or near the Site," and conduct quality control. *Id*.

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), the Complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Legal conclusions cannot satisfy this standard. *Cook v. ACS*

*State & Local Sols., Inc.*, 663 F.3d 989, 992 (8th Cir. 2011), nor does "a formulaic recitation of the elements." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, a claim is plausible only if a "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Rule 8's plausibility standard requires "more than a sheer possibility" of unlawful conduct. *Id.* While a court draws inferences in the plaintiff's favor, it must reject "conclusory or catch-all assertions of law and unwarranted inferences." *In re Cerner Corp. Sec. Litig.*, 425 F.3d 1079, 1083 (8th Cir. 2005).

## ARGUMENT

Federal law preempts all of Plaintiffs' state law tort claims for injunctive and monetary relief challenging Northrop Grumman's remediation at the Litton Site. Plaintiffs' claim for a preliminary and permanent injunction should also be dismissed because it is inadequately pleaded in the Amended Complaint and is not a recognized standalone cause of action in Missouri.

## I.     Federal Law Preempts Plaintiffs' State Law Tort Claims

Plaintiffs assert claims challenging the adequacy of Northrop Grumman's remediation of the Litton Site. Yet they concede Northrop Grumman is already performing the remediation pursuant to a CERCLA consent decree entered by this same court a decade ago. FAC ¶¶ 42, 116. Plaintiffs' claims directly conflict with federal law or, at a minimum, would impede the accomplishment of CERCLA's purposes and objectives—and are therefore preempted.

### A.     Numerous Courts Have Held that State Law Claims are Preempted if they Challenge a CERCLA Consent Decree

"The Supremacy Clause of Article VI of the United States Constitution allows Congress to enact laws that preempt state or local law." *Bartlett*, 260 F. Supp. 3d at 239.

> [A] federal statute implicitly overrides state law . . . when state law is in actual conflict with federal law. [The Supreme Court has] found implied conflict pre-emption where it is impossible for a private party to comply with both state and

federal requirements, or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.

*Union Ctr. Redevelopment Corp. v. Nat'l R.R. Passenger Corp.*, 103 F.3d 62, 64 (8th Cir. 1997) (quoting *Freightliner Corp. v. Myrick*, 514 U.S. 280, 287 (1995)). Further, "a judicial decree entered by a federal court cannot be vitiated by a state law that essentially prevents decree compliance." *State of N.J., Dep't of Env't Prot. v. Gloucester Env't Mgmt. Servs., Inc.*, No. CIV. 84-0152JBS, 2005 WL 1129763, at *12 (D.N.J. May 11, 2005).

CERCLA imposes strict requirements on a defendant subject to a consent decree. In particular, CERCLA § 122(e)(6) bars the defendant from taking "***any*** remedial action" that has not been included in the consent decree, or otherwise expressly authorized by the responsible agency:

> When either the President, or a potentially responsible party pursuant to an administrative order or ***consent decree under this chapter***, has initiated a remedial investigation and feasibility study for a particular facility under this chapter, ***no potentially responsible party may undertake any remedial action*** at the facility unless such remedial action has been ***authorized*** by the President.

42 U.S.C. § 9622(e)(6) (emphases added). This provision reflects Congress' clearly stated policy to encourage a "careful partnership between the [responsible party] and the responsible agency to ensure the appropriate remedial action is taken" and avoid any potentially inconsistent actions by potentially responsible parties. *Bartlett*, 260 F. Supp. 3d at 239, n.2; *cf. Atl. Richfield Co. v. Christian*, 140 S. Ct. 1335, 1357 (2020) (holding that under "§ 122(e)(6)" landowners could not "repair the damaged property . . . in the absence of EPA approval"). Furthermore, "[s]ettlements are the heart" of CERCLA. *Atl. Richfield Co.*, 140 S. Ct. at 1355. Indeed, Congress amended CERCLA to add Section 122 (among others) to facilitate and encourage settlements. *In re Acushnet River & New Bedford Harbor Procs. re Alleged PCB Pollution*, 712 F. Supp. 1019, 1029 (D. Mass. 1989). Accordingly, state law claims that "disrupt[] CERCLA's settlement incentive scheme by providing a potential avenue for recovery against a potentially responsible party that

has settled a CERCLA action" are preempted. *Coastline Terminals of Conn., Inc. v. USX Corp.*, 156 F. Supp. 2d 203, 208–09 (D. Conn. 2001) (discussing 42 U.S.C. § 9613(f), "which provides incentives for potentially responsible parties to settle").

Because CERCLA requires agency approval of "any remedial action" on a site subject to a consent decree, state common law is preempted where "Plaintiffs seek to hold [Defendant] liable for damages allegedly resulting from activities that were consistent with the Consent Decree, on a theory that Defendant should have conducted additional or different remediation." *Bartlett*, 260 F. Supp. 3d at 239–40. While the Eighth Circuit does not appear to have directly confronted this precise question, "[a] number of courts have held that consent decrees entered into pursuant to environmental laws sufficiently conflict with state law to warrant preemption." *Id.* at 240 (citing *Feikema v. Texaco, Inc.*, 16 F.3d 1408 (4th Cir. 1994); *Cavallo v. Star Enter.*, 100 F.3d 1150 (4th Cir. 1996); *Town of Halfmoon v. Gen. Elec. Co.*, 105 F. Supp. 3d 202 (N.D.N.Y. 2015); *Coastline Terminals of Conn., Inc. v. USX Corp.*, 156 F. Supp. 2d 203 (D. Conn. 2001); *New Mexico v. Gen. Elec. Co.*, 467 F.3d 1223 (10th Cir. 2006)).

Under CERCLA, "preemption may apply if the plaintiffs' claims merely allege activity that is consistent with a consent decree, ***regardless of the damages that plaintiffs seek***, i.e., injunctive relief or monetary damages." *Bartlett*, 260 F. Supp. 3d at 243 (emphasis added). And courts "will not permit the [Plaintiff] to achieve indirectly through the threat of monetary damages . . . what it cannot obtain directly through mandatory injunctive relief incompatible with the ongoing CERCLA-mandated remediation." *New Mexico*, 467 F.3d at 1250.

In *Bartlett*, the defendant entered into a consent decree with the State of New York, pursuant to CERCLA, to clean up a contaminated lake. 260 F. Supp. 3d at 234. Plaintiffs brought state law tort claims for negligence, nuisance, premises liability, and trespass, and sought money

damages and injunctive relief.  Specifically, the plaintiffs alleged that the defendant "maintained a dangerous condition on its property," "failed to employ reasonable care under the circumstances in implementing and in choosing the various methods for remediation at the site," and "caused toxic chemicals . . . to be released" onto plaintiffs and their properties.  *Id*. at 235.  The court recognized that a "closer examination of Plaintiffs' amended complaint, however, reveals that each of Plaintiffs' claims ***is based exclusively on the premise that Defendant should have conducted a more robust cleanup effort than the Consent Decree mandated***."  *Id*. at 243 (emphasis added).  The court held that the activities for which Plaintiffs sought to impose liability "would have violated CERCLA § 122(e)(6) [42 U.S.C. § 9622(e)(6)]" and "are, therefore, preempted," and the court dismissed the suit with prejudice.  *Id*. at 246.  The Second Circuit affirmed, noting the extensive oversight of the remediation by "expert supervising government agencies acting within their statutory authority," and held that "subjecting Honeywell to potential state tort law liability for this alleged conduct would pose an obstacle to the accomplishment and execution of Congress's full purposes and objectives."  *Bartlett*, 737 F. App'x at 550–51.

Similarly, in *Salerno v. City of Niagara Falls*, the court dismissed on preemption grounds the plaintiffs' state law tort claims relating to a 1940s–1950s waste disposal area.  No. 1:18-CV-304, 2020 WL 5814406, at *1 (W.D.N.Y. Sept. 30, 2020), *aff'd*, No. 20-3749-CV, 2021 WL 4592138 (2d Cir. Oct. 6, 2021).  The defendants had "agreed to a settlement of claims with the State of New York" regarding the site and entered "a consent decree" governing the remediation and continued "well monitoring, and groundwater sampling and analysis."  *Id*. at *2–3.  Plaintiffs alleged that defendants' negligence in both disposing of chemicals, and subsequently remediating the site, caused contaminants to enter their properties and requested money damages, punitive damages, a medical monitoring fund, and class certification.  *Id*. at *5.  The court held that all of

these claims were preempted by CERCLA and dismissed the complaint: "By questioning the ***actions related to the initial disposal and remediation***, Plaintiffs are challenging conduct that occurred pursuant to CERCLA and the consent decree . . . [which] is preempted." *Id*. (emphasis added).

These principles of federal preemption make clear that Plaintiffs cannot obtain injunctive relief concerning the Litton Site and surrounding community—which is already governed by a binding federal consent decree—and cannot obtain money damages based on actions taken in compliance with the consent decree.

**B.      Federal Law Preempts Plaintiffs' Claims for Injunctive Relief**

CERCLA bars Northrop Grumman from taking "any remedial action" on the Litton Site that MDNR has not expressly approved, and therefore preempts Plaintiffs' claim for injunctive relief premised on the contention that the remediation ordered by the 2011 Consent Decree is inadequate.  The Amended Complaint alleges that "[t]he Contamination Site and the resulting TCE contamination constitute an ongoing nuisance that will stop only by the action of Defendants." FAC ¶ 208.  Plaintiffs also directly challenge the adequacy of the 2011 Consent Decree's required remediation by seeking an injunction ordering Defendants "to ***properly*** remediate the site, remediate all areas in which TCE from the Site has spread, and prevent the further spread of TCE into Springfield." *Id.* ¶ 213 (emphasis added).

Acting under the 2011 Consent Decree, MDNR is already addressing the same concerns Plaintiffs raise here.  Specifically, the 2011 Consent Decree states that "MDNR has determined that additional work is necessary ***beyond the Settling Defendant's property boundaries***."  Ex. 1 at 7 (emphasis added).  The purpose of entering the Consent Decree was "to implement remedial actions on-Site ***and off-Site***."  *Id.* (emphasis added).  And the Consent Decree's incorporated Scope of Work states that the "selected remedial action as discussed in this [Scope of Work] is

designed to protect human health and the environment in general accordance with . . . CERCLA[,] . . . the National Oil and Hazardous Substance Pollution Contingency Plan ("NCP"), and State of Missouri regulations." Ex. 2 at 1. To that end, the Scope of Work imposes detailed requirements on Northrop Grumman's actions—both on-site and off-site—including specifying that impacted soils are to be treated using electrical resistive heating (ERH), outlining cleanup standards, and requiring Northrop Grumman to develop a field sampling plan that includes "Groundwater Sampling" and "Survey of Monitoring Wells." *Id.* at 3, 13.

The 2011 Consent Decree also mandates that Northrop Grumman "shall conduct a Feasibility Study for groundwater" subject to "MDNR['s] . . . review and approval." Ex. 1 at 16. Subsequent communications between Northrop Grumman and MDNR show that Northrop Grumman did, in fact, undertake groundwater remediation work under MDNR's direction and supervision. *See, e.g.*, Doc. 20-6 (FAC, Ex. F) at 66 ("The following activities are scheduled for January 1 through March 31, 2012: Extract and treat water from the Springfield Plateau Aquifer"); Doc. 20-7 (FAC, Ex. G) at 26 (2016 report: "ERH soil treatment has reduced shallow groundwater impacts in the vicinity of those remedial actions").

Plaintiffs' challenge to the adequacy of Northrop Grumman's remediation—and their accompanying request for injunctive relief relating to the cleanup—directly conflict with CERCLA, would present an obstacle to the successful achievement of CERCLA's purpose, and would undermine the responsible agency's determination that the selected remedial actions are appropriate for the Litton Site including the surrounding community. *See Bartlett*, 737 F. App'x at 550 ("CERCLA preempts many of the Amended Complaint's allegations because they transparently attack—on the basis of state tort law—the consent decree itself"). Indeed, CERCLA § 122(e)(6) prohibits Northrop Grumman from performing "any remedial action" at the Litton Site

other than those expressly authorized by the 2011 Consent Decree and MDNR—Northrop Grumman could not comply with **both** this provision of CERCLA **and** any cleanup injunction this Court were to issue. Plaintiffs' request for an injunction based in state law is therefore preempted. *Bartlett*, 260 F. Supp. 3d at 239–40; *see also Feikema*, 16 F.3d at 1416 (holding that claim for injunctive relief was preempted because agency's "consent order . . . will also preempt conflicting state regulation, including a federal court order based on state common law").

### C.     Federal Law Preempts Plaintiffs' Claims for Money Damages

Plaintiffs base their claims for money damages on Northrop Grumman's actions taken pursuant to the 2011 Consent Decree and mandated under MDNR's oversight; these claims are therefore preempted. Plaintiffs allege that "Defendants have failed and refused to fully remediate the TCE contamination," which allowed contamination to spread from the Litton site to neighboring properties. FAC ¶ 65. They allege that in early testing, "DNR could not identify any TCE contamination nearby wells," but "starting in 2018, TCE was detected in numerous wells." *Id*. ¶ 48. Plaintiffs also assert a failure to warn theory, claiming that Northrop Grumman failed to "bring awareness of the spread [of TCE] to the community," *id.* ¶ 67, and seek punitive damages based on Northrop Grumman's alleged "decades-long mismanagement of the Contamination Site . . . and failure to warn," *id.* ¶ 177. Both theories seek to impose liability for actions Northrop Grumman took in compliance with CERCLA and mandated by MDNR under the 2011 Consent Decree.

As discussed, Northrop Grumman's remediation at the Litton Site is subject to the detailed requirements of the 2011 Consent Decree and subject to MDNR's ongoing oversight. An October 2012 letter to MDNR confirms that Northrop Grumman's "***site activity is limited to work being conducted under a Consent Decree and Settlement . . . entered June 1, 2011***." Doc. 20-6 (FAC, Ex. F) at 49 (emphasis added). Plaintiffs do not allege that Northrop Grumman failed to perform

the remedial actions required by the 2011 Consent Decree or those mandated by MDNR—instead they claim that the remedial actions called for by the 2011 Consent Decree (and MDNR) were inadequate. For example, Plaintiffs concede that Northrop Grumman's "progress reports made to the [M]DNR" show that "Defendants' remediation efforts—as early as 2011—included extracting and treating contaminated water from the Springfield Plateau Aquifer with plans to begin extracting and treating contaminated water from the Ozark Aquifer—the aquifer used more often for wells in the area." FAC ¶ 110. Other Consent Decree-compliant progress reports Plaintiffs rely on are consistent, and demonstrate MDNR oversight and supervision of Northrop Grumman's testing and treatment of groundwater at and near the Litton Site. *Id.* ¶¶ 112–114. Plaintiffs' Amended Complaint also attaches numerous letters and emails between MDNR and Northrop Grumman, requesting and receiving permission to proceed with planned soil and groundwater remediation activities on the Litton Site. *See, e.g.*, Doc. 20-5 (FAC, Ex. E) at 6 (granting permission "to proceed with implementation of the approved work plan"); *id*. at 10, 30, 32; Doc. 20-6 (FAC, Ex. F) at 6–7 (authorizing Northrop Grumman to discharge stormwater run-off from the Litton Site); *id*. at 62, 70. For instance, an October 2012 letter from Northrop Grumman informs MDNR that "[a]n Interim Remedial Measure (IRM) is . . . being implemented for the ***extraction and treatment of groundwater*.**" Doc. 20-6 (FAC, Ex. F) at 49 (emphasis added). The 2011 Consent Decree also shows that as early as the 1970s, MDNR was closely involved in decommissioning the Litton Site and performing all pre-2011 remediation. *See supra* pp. 3–4.

The 2011 Consent decree also imposes specific requirements on Northrop Grumman to provide notice to MDNR of any "change in the condition of the Site . . . that causes or threatens to cause an additional release of Hazardous Substances from the Site or an endangerment to the public health." Ex. 1 at 31–32. In such instances, Northrop Grumman was to "notify MDNR's Project

Coordinator" and was instructed to follow CERCLA's public reporting requirements and those in the federal Emergency Planning and Community Right-To-Know Act of 1986. *Id*. at 31. CERCLA also imposes a requirement that before undertaking remedial action, a party must, among other things, "(1) Publish a notice and brief analysis of the proposed plan and make such plan available to the public" and "(2) Provide a reasonable opportunity for submission of written and oral comments." 42 U.S.C. § 9617.

Plaintiffs do not allege that Northrop Grumman failed to comply with the notification requirements in either CERCLA or the 2011 Consent Decree, and cannot dispute they had a right to participate in this mandated public process. In fact, the Amended Complaint includes a copy of Northrop Grumman's 2011 notice "***published in the Springfield News Leader***" informing residents that the "soil and groundwater" at the Litton site had been contaminated with compounds including TCE, and requesting public comments on the "Proposed Consent Decree." FAC ¶ 42 (emphasis added). Similarly, Plaintiffs do not dispute that MDNR was kept informed of all alleged contamination in off-site private wells—to the contrary, Plaintiffs allege that ***MDNR*** improperly withheld this information from the public. *Id.* ¶¶ 59, 131; *see also id.* ¶¶112–114.

Plaintiffs' request for medical monitoring damages[2] is also preempted. The Amended Complaint is not clear as to whether Plaintiffs seek an injunction compelling Northrop Grumman to fund a medical monitoring program, pay damages, or both. *Id.* ¶¶ 225–227. Regardless, under Missouri law, a claim for medical monitoring "does not create a new tort," but merely represents another way to seek "compensation for past or present injuries." *Meyer ex rel. Coplin v. Fluor Corp.*, 220 S.W.3d 712, 717 (Mo. 2007). Accordingly, Plaintiffs' request for medical monitoring

---

[2] As discussed in the concurrently filed Motion to Strike, the Amended Complaint presents myriad individual issues, such as medical monitoring, that make class adjudication improper.

damages seeks compensation for Northrop Grumman's actions in compliance with the 2011 Consent Decree, and is preempted. *See Salerno*, 2020 WL 5814406, at *1 (dismissing medical monitoring claim as preempted); *Bartlett*, 260 F. Supp. 3d at 243 ("preemption may apply . . . regardless of the damages that plaintiffs seek, i.e., injunctive relief or monetary damages").

As in *Bartlett*, "Plaintiffs are attempting to hold Defendant liable for activities consistent with the Consent Decree on the theory that Defendant should have conducted additional remediation that would have violated CERCLA § 122(e)(6)," and their claims are preempted. *Bartlett*, 260 F. Supp. 3d at 246. Plaintiffs cannot recover money damages—including medical monitoring and punitive damages—based on Northrop Grumman's alleged failure to take actions unauthorized by the Consent Decree at the Litton Site or in the surrounding community. *See id.* at 243 (recognizing preemption of plaintiffs' state law claims for "monetary damages" based on CERCLA consent decree); *New Mexico*, 467 F.3d at 1250 (same); *Town of Halfmoon*, 105 F. Supp. 3d at 218–19 (same); *Salerno*, 2020 WL 5814406, at *1 (same); *id.* at *5 ("[I]t would be improper to ask Defendants 'to go above and beyond' those measures already overseen, certified and approved by expert agencies."). Subjecting Northrop Grumman "to potential state tort law liability" for failing to take actions not specifically required by the 2011 Consent Decree "would pose an obstacle to the accomplishment and execution of Congress's full purposes and objectives," and these claims are preempted. *Bartlett*, 737 F. App'x at 551.

## II. Plaintiffs' Request for an Injunction Lacks Sufficient Specificity

The Court should dismiss Plaintiffs' request for injunctive relief "to properly remediate the site," FAC ¶ 213, for the additional and independent reason that under *Twombly* and *Iqbal*, Plaintiffs have not alleged sufficient facts identifying what specific injunctive relief they seek—despite having already amended their Complaint once. *See Parker v. Chase Home Fin., LLC*, 2011 WL 4972328, at *2 (W.D. Mo. Oct. 19, 2011) (noting that "labels and conclusions," or "a

formulaic recitation of the elements of a cause of action" are insufficient to state a claim). Plaintiffs merely allege that "Defendants should be ordered to properly remediate the site, remediate all areas in which TCE from the Site has spread, and prevent the further spread of TCE into Springfield." FAC ¶ 213. This request is silent as to the extensive remediation that has been ongoing at the Site for several decades under the Consent Decree and MDNR supervision, and fails to explain why such remediation is not "proper." Given the broad scope of federal preemption for any injunctive relief relating to a site governed by a CERCLA consent decree, the lack of specificity in Plaintiffs' allegations is fatal to stating a valid claim for injunctive relief. *See id.* ¶ 195 ("Defendants are liable to Plaintiffs for . . . injunctive relief"). The Amended Complaint does not even attempt to plead facts showing that an injunction "to properly remediate" could be crafted in a way to avoid violating CERCLA Section 122(e)(6).

## III. "Preliminary and Permanent Injunction" Is Not a Standalone Claim

Plaintiffs' fifth cause of action—a standalone claim for preliminary and permanent injunction—fails for the additional reason that injunctive relief is not a standalone cause of action under Missouri law. *See, e.g.*, *Henke v. Arco Midcon, LLC*, 750 F. Supp. 2d 1052, 1059–60 (E.D. Mo. 2010) (dismissing standalone claim for injunctive relief); *Jackson County, Mo. v. MERSCORP, Inc.*, 915 F. Supp. 2d 1064, 1072–73 (W.D. Mo. 2013) ("The Court agrees that there is no 'injunctive' cause of action under Missouri or federal law."). This cause of action should therefore be dismissed.

## CONCLUSION

Northrop Grumman respectfully requests that the Court dismiss Plaintiffs' Amended Complaint with prejudice for failure to state a claim, under Rule 12(b)(6).

Dated:  January 10, 2022

Respectfully submitted,

*/s/* Patrick W. Dennis

**BRYAN CAVE LEIGHTON PAISNER LLP**
Randy J. Soriano, #54058
Erin L. Brooks, #62764
Peter W. Bay, #67403
211 N. Broadway, Suite 3600
St. Louis, MO 63102
Telephone: (314) 259-2000
Facsimile: (314) 552-8384
rjsoriano@bclplaw.com
erin.brooks@bclplaw.com
peter.bay@bclplaw.com

-and-

Robert M. Thompson, #38156
1200 Main Street, Suite 3800
Kansas City, MO 64105
Telephone: (816) 374-3200
Fax: (816) 855-3249
rmthompson@bclplaw.com

**GIBSON, DUNN & CRUTCHER LLP**
Patrick W. Dennis, admitted *pro hac vice*
Christopher Chorba, admitted *pro hac vice*
Abbey Hudson, admitted *pro hac vice*
Joseph Edmonds, admitted *pro hac vice*
Katie Henderson, admitted *pro hac vice*
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: (213) 229-7000
Facsimile: (213) 229-7520
pdennis@gibsondunn.com
cchorba@gibsondunn.com
ahudson@gibsondunn.com
jedmonds@gibsondunn.com
khenderson@gibsondunn.com
*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I certify that on January 10, 2022, a true and correct copy of the foregoing document was filed with the Clerk of Court via CM/ECF and served on counsel for Plaintiffs through the Notice of Electronic Filing.


*/s/ Patrick W. Dennis*
Attorney for Defendants