UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| DON YORK, BEVERLY YORK, JACOB STRADLING, ALISHA YORK-STRADLING, JACK HARVEY, and JUDY HARVEY, individually and on behalf all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>NORTHROP GRUMMAN GUIDANCE AND ELECTRONICS COMPANY INC., NORTHROP GRUMMAN CORPORATION, and NORTHROP GRUMMAN MISSION SYSTEMS,<br><br>Defendants. | Court File No.: 6:21-cv-03251-BP<br><br>Judge: Chief Judge Beth Phillips<br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFFS' OPPOSING SUGGESTIONS TO DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

# TABLE OF CONTENTS

|  |  | PAGE |
|---|---|---|
| TABLE OF AUTHORITIES …………………………………………….. | | ii |
| I. | INTRODUCTION …………………………………………….… | 1 |
| II. | RELEVANT FACTS ……………………………………………. | 2 |
| III. | LEGAL STANDARD ………………………………………….... | 4 |
| IV. | ARGUMENT …………………………………………….……… | 6 |
|  | A. Defendants' Preemption Arguments Fail ……………….…… | 6 |
|  |     1. Northrop's Preemption Arguments Fail Because They Are Broad Enough to be Field Preemptive …………………………………………………...……. | 6 |
|  |     2. The Northrop Consent Decree Does Not Preempt State Law Claims ………….…………………………….. | 7 |
|  |     3. The Asserted Causes of Action Do Not Conflict with the Consent Order …………..…………………...…….. | 9 |
|  |     4. Northrop's Second Circuit Rulings Do Not Apply ….……… | 10 |
|  | B. Federal Law Does Not Preempt Plaintiffs' Claims for Injunctive Relief………..………………………………………….. | 12 |
|  | C. Federal Law Does Not Preempt Plaintiffs' Claims for Money Damages ……………………………………..………………… | 12 |
|  | D. Plaintiffs' Request for an Injunction Does Not Lack Sufficient Specificity. Limits Injunction To Medical Monitoring …………………………………………………………… | 13 |
|  | E. Plaintiffs' Preliminary and Permanent Injunction Claims are Property ……………………………………………….. | 13 |
|  | F. Should Any of Defendants' Arguments Prevail, the Proper Recourse is to File a Second Amended Complaint …………….. | 14 |
| V. | CONCLUSION …………………………………………………... | 14 |

# TABLE OF AUTHORITIES

| CASE | PAGE(S) |
|---|---|
| *Abbot v. Am. Cyanamid Co.*, 844 F.2d 1108 (4th Cir.1988) …………………… | 6 |
| *Arizona v. United States,* 567 U.S. 387 (2012) ……………………………….. | 8, 11 |
| *Bartlett v. Honeywell Int'l, Inc.,* 260 F. Supp. 3d 231 (N.D.N.Y. 2017) ……. | 10, 11, 13 |
| *Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007) …………………………….. | 4 |
| *Dailey v. Landfill*, No. 4:17 CV 24 CDP, 2020 U.S. Dist. LEXIS 49598 (E.D. Mo. Mar. 23, 2020) …………………………………………………… | 5 |
| *Ebert v. Gen. Mills, Inc.*, 823 F.3d 472 (8th Cir. 2016) …………………….. | 10 |
| *Elam v. Alcolac, Inc.*, 765 S.W.2d 42 (Mo. Ct. App. 1988) ………………… | 5 |
| *Ellison v. Fry*, 437 S.W.3d 762 (Mo. banc 2014) ……………………………. | 5 |
| *Fireman's Fund Ins. v. City of Lodi*, 302 F.3d 928 (9th Cir. 2002) ………… | 6 |
| *Gibbons v. Ogden*, 22 U.S. 1, 82, 6 L. Ed. 23 (1824) ……………………….. | 4 |
| *King v. W. Morgan-East Lawrence Water & Sewer Auth.*, No. 5:17-cv-01833-AKK, 2019 U.S. Dist. LEXIS 40191 (N.D. Ala. Mar. 13, 2019) …………………………………………………… | 5 |
| *In re Pfohl Bros. Landfill Litig.*, 67 F. Supp. 2d 177 (W.D.N.Y. 1999) ……. | 7 |
| *In re Weiand Auto. Indus.,* 612 B.R. 824 (Bankr. D. Del. 2020) …………… | 5 |
| *Kansas City v. W.R. Grace & Co.*, 778 S.W.2d 264 (Mo. Ct. App. 1989) …. | 5 |
| *Manor Care, Inc. v. Yaskin*, 950 F.2d 122 (3d Cir. 1991) …………………… | 6 |
| *Moore v. Walter Coke, Inc.*, No. 2:11-cv-1391-SLB, 2012 U.S. Dist. LEXIS 140207 (N.D. Ala. Sep. 28, 2012) ………………….. | 6 |
| *Morton v. Becker,* 793 F.2d 185 (8th Cir. 1986) …………………………….. | 4 |
| *N. States Power Co. v. City of Ashland*, No. 12-cv-602-bbc, 2013 U.S. Dist. LEXIS 206203 (W.D. Wis. Apr. 1, 2013) ………………….. | 7 |

*New Mexico v. GE*, 467 F.3d 1223 (10th Cir. 2006) …………………………  6

*Niagara Mohawk Power Corp. v. Chevron U.S.A., Inc.*,
596 F.3d 112 (2d Cir. 2010) ……………………………………………….  6

*PMC, Inc. v. Sherwin-Williams Co.,* 151 F.3d 610 (7th Cir. 1998) ………….  6, 7

*Salerno v. City of Niagara Falls,* No. 1:18-CV-304, 2020 WL 5814406
(W.D.N.Y. Sept. 30, 2020) ……………………………………………….  10, 11

*Town of Halfmoon v. Gen. Elec. Co.*, 105 F.Supp.3d 202
(N.D.N.Y. 2015) ………………………………………………………..  11

*United States v. Colorado,* 990 F.2d 1565 (10th Cir. 1993) …………………  6

## **RULES**

Fed. R. Civ. P. 12(b)(6) …………………………………………………….  4

Fed. R. Civ. P. 15(a) ………………………………………………………..  14

## **STATUTES**

Comprehensive Environmental Response, Compensation, and Liability Act
("CERCLA") 42 U.S.C. § 9652(d)…………………………………………  *passim*

## I. Introduction

Despite becoming aware at least as early as 2004 that the carcinogen trichloroethylene ("TCE") spread into the community from a site in Springfield, Missouri for which they were the legally responsible parties, Defendants Northrop Grumman Guidance and Electronics Company Inc., Northrop Grumman Corporation, and Northrop Grumman Mission Systems (together, "Defendants" or "Northrop") hid this information from the community for over a decade. During those years, Plaintiffs and the putative Classes drank, bathed in, and cooked with TCE contaminated water. Only after others became aware of the TCE leak in 2018-2019 was the Springfield community finally informed.

Had Defendants informed the community in 2004 of the spread of TCE, Plaintiffs and the Classes would have refrained from using contaminated water. Plaintiffs and the Classes also would have not purchased properties within the 21-square mile area designated by the Missouri Department of Natural Resources ("MDNR") as a TCE at-risk zone, or from making renovations to properties owned by them within that area. Northrop's silence robbed Plaintiffs and the Classes from the ability to make such decisions.

Northrop now asks this Court to dismiss the entire lawsuit under the context of preemption by the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"). It is Northrop's position that despite being the legally responsible owners of the site from which the TCE contamination spread, it had and has no responsibility to inform the community of risks to their health and property. It goes without saying that setting such precedent would reward legally responsible parties for remediating contaminated sites to hide the spread of dangerous chemicals from their properties. That is not the purpose of CERCLA.

Regardless, Northrop's preemption argument fails on the merits. Although couched as conflict preemption, Northrop's position is actually field preemption as it would bar any state law claims. CERCLA, however, is expressly not field preemptive.

Focusing on conflict preemption, Defendants' claims fail because the Consent Order upon which it bases its arguments is not as broad as Defendants' purport. Further, Defendants only generally allege Plaintiffs' suit conflicts with CERCLA because it allegedly "attempt[s] to challenge or modify" cleanup of the contaminated site. This action, however, does not interfere with Northrop's remedial actions. Instead, Plaintiffs only seek relief under common law theories that have long been recognized by Missouri courts as a basis for recovery for personal injury and property damage from parties found to be responsible for the release of hazardous substances. Northrop's motion in this regard should therefore be denied. To the extent the Court believes any claims should be dismissed, Plaintiffs request permission to file a Second Amended Complaint to reiterate Plaintiffs' claims do not conflict with Northrop's CERCLA responsibilities.

Beyond its preemption defense, Defendants attack Plaintiffs' injunction request as allegedly lacking specificity. Defendants also claim that Plaintiffs' injunctive relief cannot act as a standalone claim. For the reasons stated below, these concerns are easily addressed.

## II. Relevant Facts

The Amended Complaint explains that Defendants own, operate, and are legally responsible—since at least 2001—for a former Litton Systems Inc. site at 4811 W. Kearney St. in Springfield, Missouri ("the Site"). Docket No. 20 at ¶1. The Site is less than a quarter mile from the Plaintiffs' properties. *Id.,* ¶30.

Defendants became aware at least in 2004 that TCE contamination spread from the Site to at least one "private well." *Id.,* ¶¶ 6, 113-114, 119-122. At least as of that time a duty arose for

2

Northrop to notify the community of the risks its TCE posed to those that drank, bathed in, or cooked with well water. Northrop, however, withheld this information from the community. *Id.*

Plaintiffs and the Classes only became aware of the TCE spread after MDNR testing found TCE at a location three miles from the Site. *Id.,* ¶¶46, 62, 121. After this discovery, MDNR tested discovered TCE in a large number of private wells. *Id.,* ¶¶47, 53-55.

The TCE contamination came as a surprise to Springfield property owners. *Id.,* ¶59. At a 2019 public forum, a Missouri MDNR official apologized for the way the state—and necessarily the Defendants—handled the TCE contamination.

> "For those people for whom this came as a surprise, especially for those who had TCE in their (water) wells and didn't know it, I apologize," Galbraith said. "We didn't tell people about it in a timely manner. We're here in part to make amends."

*Id.*

Because of this failure to timely warn, Plaintiffs and the Classes were exposed to TCE from their well water from at least 2004. In view of the above, this action was filed, alleging Defendants did not timely warn Plaintiffs or the Classes. *Id.,* ¶¶65, 103-132.

Despite the above, Northrop unbelievably argues that cleanup of the Litton Site was "highly public" and "extensive." Docket No. 28-1 at p. 5 of 21. Neither is true. Northrop admits it only gave notice in 2011 that "'soil and groundwater' *at* the Litton site had been contaminated with compounds including TCE.'" *Id.* at p. 13 of 21 (emphasis added). Although Northrop was aware of contamination in private wells in 2004, seven year later in its 2011 publication, it gave the false impression that the TCE contamination was contained. It was not until 2018-2019 or later that Northrop finally confessed that the carcinogen TCE had spread from the Site. Because of this withholding of information, the community could not have meaningfully participated in any CERCLA required process prior to 2018-2019, let alone in 2011.

3

Northrop's cleanup also has not been "extensive." In 2001, no private wells tested positive for TCE; however, since Northrop took over the site, private wells have tested positive. Docket No. 20, ¶¶47-55, 113-114. Further, in 2020, Northrop admitted "It is technically infeasible to hydraulically capture contaminant mass in the karts system under dynamic flow conditions." Docket No. 20, Ex. 1, Technical Update and Conceptual Path Forward at p. 83 of 97.

Finally, it is notable that while trumping a preemption defense, Northrop's motion does not allege a failure to plead any elements of the asserted common law claims. Through its silence, Northrop acknowledges that Plaintiffs sufficiently alleged all elements of their claims.

### III. Legal Standard

In deciding a motion to dismiss pursuant to Rule 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant. *Morton v. Becker,* 793 F.2d 185, 187 (8th Cir. 1986). To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 545 (2007).

Under the Supremacy Clause of the U.S. Constitution, state laws that "interfere with, or are contrary to the laws of Congress" are preempted and are therefore invalid. *Gibbons v. Ogden*, 22 U.S. 1, 82, 6 L. Ed. 23 (1824). There are two types of preemption: express and implied. Relevant here, implied preemption can occur one of two ways: through field or conflict preemption. The Savings Clause of CERCLA makes it clear express and field preemption do not apply:

> Nothing in this chapter shall affect or modify in any way the obligations or liabilities of any person under other Federal or State law, including common law, with respect to releases of hazardous substances or other pollutants or contaminants. The provisions of this chapter shall not be considered, interpreted, or construed in any way as reflecting a determination, in part or whole, of policy regarding the inapplicability of strict liability, or strict liability doctrines, to activities relating to hazardous substances, pollutants, or contaminants or other such activities.

4

42 U.S.C. § 9652(d). CERCLA then does not bar all state law claims.

As Northrop confirms, the Eighth Circuit appears to have not addressed the question of whether "consent decrees entered into pursuant to environmental laws sufficiently conflict with state law to warrant preemption." Docket No. 28-1 at p. 11 of 21. However, relief under common law theories for personal injury and property damage as a result of the release of hazardous substances have long been recognized by Missouri courts as a basis for recovery. *See, e.g., Elam v. Alcolac, Inc.*, 765 S.W.2d 42 (Mo. Ct. App. 1988) (nuisance, negligence); *Kansas City v. W.R. Grace & Co.*, 778 S.W.2d 264 (Mo. Ct. App. 1989) (negligence, strict liability, civil conspiracy), abrogated on other grounds by *Ellison v. Fry*, 437 S.W.3d 762 (Mo. banc 2014).

Case law further emphasizes that CERCLA does not preempt or conflict with all state law claims. *See, e.g., Dailey v. Landfill*, No. 4:17 CV 24 CDP, 2020 U.S. Dist. LEXIS 49598, at *15 (E.D. Mo. Mar. 23, 2020)("And CERCLA does not completely preempt state tort liability for damages caused by the release of hazardous substances. The causes of action the Daileys pursue do not necessarily depend on resolution of substantial questions regarding response-cost liabilities or other obligations imposed by CERCLA.").[1] For example, case law is rife with decisions discussing the effect of CERCLA § 9658 on state statutes of limitations, necessarily confirming that state law claims can proceed even in view of CERCLA. See, e.g., *In re Weiand Auto. Indus.,* 612 B.R. 824, 836 (Bankr. D. Del. 2020)(claims included public nuisance, continuing private nuisance, negligence, negligence per se, waste, continuing trespass, etc.); *King v. W. Morgan-East Lawrence Water & Sewer Auth.*, No. 5:17-cv-01833-AKK, 2019 U.S. Dist. LEXIS 40191, at *5-6 (N.D. Ala. Mar. 13, 2019) ("The Plaintiffs allege personal injuries

---

[1] Although in the context of a motion to remand, the issues are the same: if there is no conflict between state laws and CERCLA, there is no federal jurisdiction/no potential conflict.

5

from their exposure to unsafe levels of PFOA, PFOS, and related chemicals in their drinking water, and assert common law claims for negligence, nuisance, fraudulent concealment, and wantonness against 3M."); *Moore v. Walter Coke, Inc.*, No. 2:11-cv-1391-SLB, 2012 U.S. Dist. LEXIS 140207, at *54 (N.D. Ala. Sep. 28, 2012) (nuisance, trespass and negligence claims). CERCLA preempts state law only when there is an actual conflict. *Niagara Mohawk Power Corp. v. Chevron U.S.A., Inc.*, 596 F.3d 112, 138 (2d Cir. 2010); *PMC, Inc. v. Sherwin-Williams Co.,* 151 F.3d 610, 617-18 (7th Cir. 1998).

Further, "[t]he presumption against preemption is even stronger against preemption of state remedies, like tort recoveries, when no federal remedy exists." *Abbot v. Am. Cyanamid Co.*, 844 F.2d 1108, 1112 (4th Cir.1988). Although CERCLA provides for private causes of action, those causes of action are limited to recovery of response costs. See 42 U.S.C. § 9607(a).

### IV. Argument

#### A. Defendants' Preemption Arguments Fail

**1. Northrop's Preemption Arguments Fail Because They Are Broad Enough to be Field Preemptive**

Although Defendants do not explicitly state the preemption they seek, it appears to be conflict preemption—although the extent of preemption sought really is field preemption.

As discussed above, CERCLA's savings clause explains it is not a bar to state actions. 42 U.S.C. § 9652(d); 42 U.S.C. § 9658(a)(1) and (2). And as the Tenth Circuit explained:

> Congress did not intend CERCLA to completely preempt state laws related to hazardous waste contamination. *See, e.g., Fireman's Fund Ins. v. City of Lodi*, 302 F.3d 928, 941-43 (9th Cir. 2002). "Congress clearly expressed its intent that CERCLA should work in conjunction with other federal and state hazardous waste laws in order to solve this country's hazardous waste cleanup problem." *United States v. Colorado,* 990 F.2d 1565, 1575 (10th Cir. 1993); *accord Manor Care, Inc. v. Yaskin*, 950 F.2d 122, 125-26 (3d Cir. 1991)(Alito, J).

*New Mexico v. GE*, 467 F.3d 1223, 1244 (10th Cir. 2006).

Northrop basically argues that consent decrees reciting CERCLA sufficiently conflict with state law to warrant preemption in all cases. See, e.g., Docket 28-1 at p. 19 of 21 ("Given the broad scope of federal preemption for *any* injunctive relief relating to a site governed by a CERCLA consent decree…" (emphasis added)); p. 13 of 21 ("These principles of federal preemption make clear that Plaintiffs cannot obtain injunctive relief concerning the Litton Site and surrounding community—which is already governed by a binding federal consent decree—and cannot obtain money damages based on actions taken in compliance with the consent decree"). Northrop's preemption defense actually seeks complete immunity for the Site. Courts facing similarly overly-broad, field-type preemption arguments have rejected them.

> If any state law claim related to environmental contamination was preempted whenever a party raised a CERCLA claim, then CERCLA has preempted the field of hazardous waste cleanup, contrary to the governing case law. Moreover, defendants' position is contrary to the plain language of §§ 9614(a) and 9652(d), which expressly authorizes state law claims that impose additional liability.

*N. States Power Co. v. City of Ashland*, No. 12-cv-602-bbc, 2013 U.S. Dist. LEXIS 206203, at *20 (W.D. Wis. Apr. 1, 2013); see also *PMC,* 151 F.3d at 617-18 ("The passage of federal environmental laws was not intended to wipe out the common law of nuisance"); *In re Pfohl Bros. Landfill Litig.*, 67 F. Supp. 2d 177, 184 (W.D.N.Y. 1999) ("First, CERCLA, of which § 9658 is a part, neither preempts the state toxic tort actions brought by Plaintiffs nor creates a federal cause of action for such relief."). Because Defendants' preemption arguments are so general as to encompass any state law claims or relief, they should be denied on this basis alone.

### 2. The Northrop Consent Decree Does Not Preempt State Law Claims

True conflict preemption occurs when "compliance with both federal and state regulations is a physical impossibility" or when state law "stands as an obstacle to the accomplishment and

7

Case 6:21-cv-03251-BP   Document 29   Filed 02/08/22   Page 11 of 19

execution of the full purposes and objectives of Congress." *Arizona v. United States*, 567 U.S. 387, 399-400 (2012) (internal citations omitted). There is no such conflict here.

The basis for Northrop's claim is that Plaintiffs' causes of action allegedly conflict with the Consent Decree. They do not. First, despite Defendants' argument that the Consent Decree somehow extends beyond the Site, the geographical limits of the Consent Decree are explicit:

> This Consent Decree pertains to the real property, located at 4811 West Kearney Street, Springfield, Greene County, Missouri, and as identified on Exhibit "1" attached hereto and incorporated herein (the "Site").

Docket No. 28-2, Consent Decree and Settlement at §I(C). Plaintiffs' and the Classes' properties are outside of the Site, indicating the EPA has not exercised jurisdiction over them. They are not then encompassed by the Consent Decree, and the actions sought here do not conflict with Northrop's requirements under the CERCLA.[2]

Second, the Consent Order preserves Northrop's responsibilities under state law. The "Compliance With Other Laws" section provides "Settling Defendant shall perform all Work required pursuant to this Consent Decree *in accordance with all applicable local, state, and federal laws and regulations…*" *Id.*, ¶47 (emphasis added). This is an express reservation of state law claims, including those brought by Plaintiffs here.

Third, and similarly, the Reservation of Rights section of the Consent Decree reinforces that the state can bring claims against Northrop, including the "common law [claim] of public nuisance."

> Further, except as specifically provided in this Consent Decree, including, but not limited to, Section XVI (Covenant Not to Sue), nothing herein shall prevent the MDNR from seeking legal or equitable relief to enforce the terms of this Consent Decree, from taking

---

[2] Northrop in essence argues that because hazardous materials from the Site came to be located on Plaintiffs' properties, those properties are now within federal jurisdiction. To take this argument to its logical conclusion, Plaintiffs' properties would therefore be a "facility" even without release of hazardous materials. This is not a logical reading of CERCLA.

> other legal or equitable action as it deems appropriate and necessary, or from seeking to require Settling Defendant in the future to perform additional response actions or to reimburse the State for any injury to its natural resources pursuant to CERCLA, § 260.500, et seq., RSMo, or any other applicable law, *including the common law of public nuisance.*

*Id.* §XIII(70) (emphasis added)). While this section is a reservation of rights for the state, the express reservation of "public nuisance" shows such claims are not preempted.[3]

Finally, if issues of preemption may exist, denial of Northrop's motion is still necessary because discovery would be necessary to determine if there is a conflict with CERCLA or if the potential conflict coalesces with state law requirements. As Northrop admits, cleanup of the site has been "under both federal and state law." Docket 28-1 at p. 5 of 21. To be clear, the EPA does not actively participate with the Site. *Id*. at 6. It is the state agency MDNR that actively monitors Northrop's cleanup of the Site. Given the interplay between federal and state laws contemplated within the Consent Order, any potential conflict would need to be fleshed out through discovery.

### 3. The Asserted Causes of Action Do Not Conflict with the Consent Order

Even if there is the potential for conflict with the Consent Order or CERCLA, Plaintiffs claims do not present such obstacles. Plaintiffs do not seek cleanup, removal, or remedial action within the Site. And Plaintiffs' and the Classes' properties are not within the Site.

Because Northrop's motion only generally complains about conflicts, it does not recite how Plaintiffs' claims or requested relief would make it impossible to comply with the Consent Order. There is then no "physical impossibility" form of conflict here because Northrop can comply with the Consent Order concerning the Site. Had Northrop simply informed Springfield residents of the 2004 contamination or (as here) if it had not, neither action would have

---

[3] If Northrop's challenge is that all public nuisance law claims are preempted by the Consent Decree, MDNR should be allowed to intervene so as to not lose any rights.

9

interfered with Northrop's remedial requirements. Similarly, paying damages for Northrop's failure to notify Springfield tenants and residents does not interfere with its remediation plan.

Finally, Defendants' position is inconsistent with caselaw from its motion to strike. There, Northrop heavily relied on *Ebert v. Gen. Mills, Inc.*, 823 F.3d 472, 475 (8th Cir. 2016) where residents sued over TCE exposure. Despite the Eighth Circuit overruling the lower court's holding of certifying a class, the case was allowed to proceed with the action, showing TCE cases are not preempted by CERCLA.

### 4. Northrop's Second Circuit Rulings Do Not Apply

For its preemption argument, Northrop relies almost exclusively on Second Circuit decisions such as *Bartlett* and *Salerno*.[4] However, even under Northrop's overly broad reading of such cases, Plaintiffs' claims should proceed.

*Bartlett* and *Salerno* differ from the instant action as they focus on attempts by those plaintiffs to seek a more robust cleanup effort than the Consent Decree mandated. Docket 28-1 at p. 11 of 21. Northrop adopts this position when it argues that "…once a party undertakes a cleanup pursuant to a consent decree, that party cannot perform any 'remedial action' on the site—whether required by state law or otherwise—unless such action has 'been authorized' by the responsible agency." Docket No. 28-1 at p. 5 of 21. Defendants' preemption theory then is limited to interference with "'remedial action' on the site." *Id.*

Providing *notice* of the TCE contamination to the surrounding community, however, does not interfere with, nor is it, "remedial action on the site." CERCLA's definition of "remedial action" focuses on the physical activities of remedying hazardous substances from the environment.

---

[4] *Bartlett v. Honeywell Int'l, Inc.,* 260 F. Supp. 3d 231, 243 (N.D.N.Y. 2017), aff'd, 737 F. App'x 543 (2d Cir. 2018); *Salerno v. City of Niagara Falls,* No. 1:18-CV-304, 2020 WL 5814406, at *1 (W.D.N.Y. Sept. 30, 2020), aff'd, No. 20-3749-CV, 2021 WL 4592138 (2d Cir. Oct. 6, 2021).

(24)The terms "remedy" or "remedial action" means those actions consistent with permanent remedy taken instead of or in addition to removal actions in the event of a release or threatened release of a hazardous substance into the environment, to prevent or minimize the release of hazardous substances so that they do not migrate to cause substantial danger to present or future public health or welfare or the environment. The term includes, but is not limited to, such actions at the location of the release as storage, confinement, perimeter protection using dikes, trenches, or ditches, clay cover, neutralization, cleanup of released hazardous substances and associated contaminated materials, recycling or reuse, diversion, destruction, segregation of reactive wastes, dredging or excavations, repair or replacement of leaking containers, collection of leachate and runoff, onsite treatment or incineration, provision of alternative water supplies, and any monitoring reasonably required to assure that such actions protect the public health and welfare and the environment. The term includes the costs of permanent relocation of residents and businesses and community facilities where the President determines that, alone or in combination with other measures, such relocation is more cost-effective than and environmentally preferable to the transportation, storage, treatment, destruction, or secure disposition offsite of hazardous substances, or may otherwise be necessary to protect the public health or welfare; the term includes offsite transport and offsite storage, treatment, destruction, or secure disposition of hazardous substances and associated contaminated materials.

42 U.S.C. §9601 (24). Providing notice to the community of hazardous materials spreading from the Site cannot conflict with CERCLA "remedial action" or the consent decree.

Even if providing notice could somehow be interpreted as "remedial action," as stated above, Defendants do not explain how providing such notice would have interfered with their remediation efforts. It is insufficient to point generally to the past or to look vaguely to the future and claim a potential conflict. See *Arizona*, 567 U.S. at 399-400 ("In preemption analysis, courts should assume that 'the historic police powers of the States' are not superseded 'unless that was the clear and manifest purpose of Congress.'").

Finally, the Amended Complaint differs from *Bartlett* and *Salerno* in that this action focuses on the original hazardous waste deposit of TCE as the culprit. Even New York cases have focused on this difference when invoking the CERCLA savings clause. See, e.g., *Town of Halfmoon v. Gen. Elec. Co.*, 105 F.Supp.3d 202 (N.D.N.Y. 2015)(CERCLA savings clauses may allow for common law claims that concern the original waste deposit).

11

### B. Federal Law Does Not Preempt Plaintiffs' Claims for Injunctive Relief

While the above explains why Defendants' motion should be denied, Northrop raises the same arguments separately to Plaintiffs' request for injunctive relief and claims for damages. While the identical analysis applies, for parity's sake, Plaintiffs respond briefly to each.

Northrop's position regarding injunctive relief is that CERCLA prevents it from being enjoined for any reason whatsoever. See, e.g., Docket 28-1 at p. 19 of 21 ("Given the broad scope of federal preemption for *any* injunctive relief relating to a site governed by a CERCLA consent decree…" (emphasis added)); p. 13 of 21 ("These principles of federal preemption make clear that Plaintiffs cannot obtain injunctive relief concerning the Litton Site and surrounding community…"). As explained above, such an argument is field preemptive which is improper. Under principles of conflict preemption, only injunctions that interfere with the Consent Decree or site cleanup would be improper. That is not here.

Further, Defendants do not identify any actual conflicts between Plaintiffs' requested injunctive relief and their alleged responsibilities under the Consent Decree. Without a conflict, there is no conflict preemption.

For example, Plaintiffs' medical monitoring injunctive request is proper. CERCLA's definition of "remedial actions" highlights that medical monitoring would not conflict with any actions required by Northrop. 42 U.S.C. §9601 (24). Northrop also does not explain how injunctive relief for medical monitoring would conflict with its specific duties under CERCLA. It therefore fails to meet its burden. Plaintiffs' injunctive relief is therefore not preempted.

### C. Federal Law Does Not Preempt Plaintiffs' Claim for Money Damages

Again, Northrop's position is really that *any* money damages are preempted by CERCLA. See, e.g., Docket 28-1 at p. 13 of 21 ("These principles of federal preemption make clear that

12

Plaintiffs…cannot obtain money damages based on actions taken in compliance with the consent decree"). Like above, Defendants' reading of "remedial action" is overly broad as Northrop cannot explain how its failure to disclose (or duty to disclose) the fact of TCE spread form the Site would have interfered or conflicted with its site cleanup in any manner. Nor can it explain how a damages' judgment due to its failure to abide by its duties would interfere with completing its required duties under the Consent Order. Without providing such specific examples, it cannot carry its burden.

For the same reasons, medical monitoring damages would also not interfere with Northrop's ability to remediate the site, and Northrop does not explain how it would. Instead, Northrop argues that *Bartlett* would prohibit recovery of damages to due medical monitoring because medical monitoring is "additional remediation." There is no explanation of how "medical monitoring" is remediation, let alone how these alleged "additional" actions would conflict. Northrop's motion in this regard should therefore be denied.

### D. Plaintiffs' Request for an Injunction Does Not Lack Sufficient Specificity. Limits Injunction to Medical Monitoring

Plaintiffs' injunctive relief does not lack sufficient specificity. Regardless, if additional specificity is required, Plaintiffs request leave to file an amended complaint focusing solely on medical monitoring.

### E. Plaintiffs' Preliminary and Permanent Injunction Claims are Proper

Defendants' request here focuses on form over substance. Whether an injunction is a claim or a requested relief, the result is the same. Regardless, if this Court finds standalone claims for injunctions are improper, Plaintiffs seek leave to remove the claims for injunction while preserving the injunctive remedies in the Prayer for Relief (as either way results in the

same outcome). The Prayer for Relief currently recites "Enjoining Defendants as described herein" so this would not add any new material to the complaint.

### F. Should Any of Defendants' Arguments Prevail, the Proper Recourse is to File a Second Amended Complaint

If this Court determines that any of Plaintiffs' claims are preempted by CERCLA or that they can be interpreted as conflicting with cleanup, removal, or remedial action within the Site (which they are not intended), Plaintiffs request leave under Fed. R. Civ. P. 15 to file a Second Amended Complaint. Under Fed. R. Civ. P. 15(a), "leave shall be feely given when justice so requires." Such leave should be granted because here there is no undue prejudice to the opposing party or undue delay (this case has only just been filed), such amendments would not be bad faith (they would be made to overcome deficiencies alleged by the Defendants), and such amendments would not be futile at they would expressly clarify Plaintiffs' claims do not conflict with Northrop's CERCLA requirements.

### V. Conclusion

Northrop's preemption arguments fail on the merits. This action does not interfere with Northrop's remedial actions at the Site; it focuses on Northrop's failure to inform the community that it poisoned them and their property and withheld this information from the public. Plaintiffs seek relief only under common law theories that have long been recognized by Missouri courts as a basis for recovery for personal injury and property damage. Further, Defendants' attacks on Plaintiffs' injunction request as lacking specificity and claim that injunctive relief cannot be a standalone claim can be dealt with through a Second Amended Complaint.

Finally, to the extent the Court believes any claims should be dismissed, Plaintiffs request permission to file a Second Amended Complaint to overcome any perceived deficiencies.

Dated: February 8, 2022                                    Respectfully submitted,

                                               PEIFFER WOLF CARR KANE
                                               CONWAY & WISE LLP
                                               By: */s/Paul A. Lesko*
                                               Paul A. Lesko – MO #51914
                                               Brandon M. Wise – MO #67242
                                               Peiffer Wolf Carr Kane & Conway LLP
                                               818 Lafayette Ave., Floor 2
                                               St. Louis, MO 63104
                                               Ph: (314) 833-2826
                                               E: plesko@peifferwolf.com
                                               E: bwise@peifferwolf.com

**CERTIFICATE OF SERVICE**

I hereby certify that on February 8, 2022, the foregoing document was served upon all counsel of record through the Court's ECF system.

                                                                             */s/ Paul A. Lesko*