UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| DON YORK, BEVERLY YORK, JACOB STRADLING, ALISHA YORK-STRADLING, JACK HARVEY, and JUDY HARVEY, individually and on behalf all others similarly situated,<br><br>  Plaintiffs,<br><br>vs.<br><br>NORTHROP GRUMMAN GUIDANCE AND ELECTRONICS COMPANY INC., NORTHROP GRUMMAN CORPORATION, and NORTHROP GRUMMAN MISSION SYSTEMS,<br><br>  Defendants. | Court File No.: 6:21-cv-03251-BP<br><br>Judge: Chief Judge Beth Phillips<br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFFS' SUGGESTIONS IN OPPOSITION TO DEFENDANTS'
MOTION TO STRIKE CLASS ALLEGATIONS**

# TABLE OF CONTENTS

|  |  | PAGE |
|---|---|---|
| TABLE OF AUTHORITIES ……………………………………….. | | ii |
| I. | INTRODUCTION …………………………………….… | 1 |
| II. | ARGUMENT ……………………………………………. | 2 |
| | a. Northrop's Inconsistent Position in Another Co-Pending TCE Lawsuit Emphasizes Discovery Should be Allowed Here ……... | 2 |
| | b. Defendants' Motion is Premature ………………………… | 2 |
| | c. Defendants Bear a High Burden of Proof ………………… | 3 |
| | d. Defendants' Challenge Fails on the Merits ……………….. | 4 |
| | 1. Factors such as "Whether TCE spread from the confines of Contamination Site: and "Whether the TCE spread from the Contamination Site constitutes an additional threat of Exposure to chemical and/or industrial waste beyond the Proximity of the Contamination Site ……………………….. | 6 |
| | 2. When did Defendants become aware that TCE had spread From the contamination site ………………………………… | 8 |
| | 3. The scope of duties owed by Defendants to those who have Now have TCE contamination on their properties, including But not limited to, a duty to warn of the spread of TCE ……. | 8 |
| | 4. Whether the relief of medical monitoring is appropriate ……. | 8 |
| | 5. Whether punitive damages are proper ………………………. | 9 |
| | e. Northrop's Arguments Fail …………………………………… | 10 |
| | f. Plaintiff's Medical Monitoring Claims are Proper ……………. | 13 |
| | g. Defendants' Raising of Rule 23(b)(1) and 23(b)(2) is Premature …………………………………………………….... | 15 |
| | h. Should Defendants Succeed, the Proper Remedy Would be to Allow Plaintiff to Amend …………………………………….. | 15 |

III.     CONCLUSION …………………………………………...       15


III.     CONCLUSION …………………………………………...       15

**TABLE OF AUTHORITIES**

**CASE**                                                                                                    **PAGE(S)**

*BJC Health Sys. v. Columbia Cas. Co.*, 478 F.3d 908 (8th Cir. 2007) ……..       2-3

*Colley v. P&G*, No. 1:16-cv-918, 2016 U.S. Dist. LEXIS 137725
(S.D. Ohio Oct. 4, 2016) ………………………………………………       15

*Courtright v. O'Reilly Auto. Stores, Inc.*, 2014 U.S. Dist. LEXIS 201074
2014 WL 12623695 (W.D. Mo. July 7, 2014) …………………………...       3

*Doyel v. McDonald's Corp.,* 2009 U.S. Dist. LEXIS 9622,
2009 WL 350627 (E.D. Mo. Feb. 10, 2009) ………………………………       4

*Ebert v. General Mills, Inc.,* 823 F.3d 472 (8th Cir. 2016) …………………       10-14

*Grovatt v. St. Jude Med. Inc. (In re St. Jude Med., Inc.)*,
425 F.3d 1116 (8th Cir. 2005) ……………………………………………….       14

*Legacy Gymnastics, LLC v. Arch Ins. Co.*, No. 2:20-cv-04214-NKL,
2021 U.S. Dist. LEXIS 108242 (W.D. Mo. June 9, 2021) …………………       2, 4

*Lipari-Williams v. Mo. Gaming Co*., 339 F.R.D. 515 (W.D. Mo. 2021) ……       5, 6, 8

*Lockwood Motors, Inc. v. Gen. Motors Corp.,* 162 F.R.D. 569
(D. Minn. 1995) ……………………………………………………………..       7

*Martin v. Behr Dayton Thermal Prods. LLC,* 896 F.3d 405
(6th Cir. 2018) ……………………………………………………………….       13

*Mason v. AshBritt, Inc.,* No. 19-cv-01062-DMR, 2020 U.S. Dist.
LEXIS 27333 (N.D. Cal. Feb. 17, 2020) ……………………………………       10

*Meyer v. Fluor Corp*., 220 S.W.3d 712 (Mo. 2007) …………………………       13, 14

*Nobles v. State Farm Mut. Auto. Ins. Co.*, 2012 U.S. Dist. LEXIS 132318,
2012 WL 4090347 (W.D. Mo. Sept. 17, 2012) …………………………….       3

*Orduno v. Pietrzak,* 932 F.3d 710 (8th Cir. 2019) …………………………       5

*Pennington v. BHP Billiton Petroleum (Fayetteville) LLC,*
No. 4:20-cv-00178-LPR, 2021 U.S. Dist. LEXIS 69888
(E.D. Ark. Apr. 12, 2021) …………………………………………………..       3

*Romano v. Northrop Grumman Corp.,* No. 16-CV-5760 (DRH)(ARL),
2019 U.S. Dist. LEXIS 99435 (E.D.N.Y. June 13, 2019) …………………..  2

*Sherrard v. Boeing Co.,* No. 4:13-CV-1015 (CEJ),
2013 U.S. Dist. LEXIS 154125 (E.D. Mo. Oct. 28, 2013) ………………….  4

*Stanbury Law Firm v. Internal Revenue Serv.*, 221 F.3d 1059
(8th Cir. 2000) …………………………………………………………….  3

*Stuart v. State Farm Fire & Cas. Co.,* 910 F.3d 371 (8th Cir. 2018) ……….  7

*Walker v. World Tire Corp., Inc.*, 563 F.2d 918 (8th Cir. 1977) …………….  4

## **RULES**

Fed. R. Civ. P. 12(b)(6) …………………………………………………….  4

Fed. R. Civ. P. 12(f) ……………………………………………………….  2

Fed. R. Civ. P. 23 ………………………………………………………….  *passim*

## I. Introduction

Northrop Grumman Guidance and Electronics Company Inc., Northrop Grumman Corporation, and Northrop Grumman Mission Systems' (together, "Northrop" or "Defendants") motion to strike inappropriately and inaccurately prejudges the merits of Plaintiffs' plain and adequate class action allegations. First, Northrop's brief lacks a discussion of the steep burden it must meet and therefore incorrectly relies on cases from the class certification stage. At this early stage Northrop would be successful in its motion only if there are no set of facts that could buttress class certification. Northrop falls short of this demanding standard.

Second, Northrop has not explained why this case is so exceptional as to depart from the more common result of denying motions to strike class allegations. Plaintiffs filed their Amended Complaint with plausible and clear class-action allegations. There is no reason Plaintiffs should be denied discovery to test these allegations—especially when Northrop is proceeding through the class certification process in a similar New York action.

Third, Northrop's early motion to strike fails on its merits. This is not a case where the class allegations are so deficient on their face that the Court should deny Plaintiffs an opportunity to conduct discovery and prove their allegations. Further, Northrop does not address potential issue classes…which is why discovery is necessary. Rather, Plaintiffs plausibly and clearly pled all elements for class certification to proceed into discovery.

Northrop cannot meet the high burden required, nor did it apply the proper analysis. Regardless, as explained below, even if the burden were on Plaintiffs, the case as pled supports certification. Northrop's motion should therefore be denied in its entirety.

## II. Argument

### a. Northrop's inconsistent position in another co-pending TCE lawsuit emphasizes discovery should be allowed here

The instant motion to strike is perplexing in that Northrop is currently embroiled in a similar action in the Eastern District of New York. *Romano v. Northrop Grumman Corp.,* No. 16-CV-5760 (DRH)(ARL), 2019 U.S. Dist. LEXIS 99435, at *1-2 (E.D.N.Y. June 13, 2019). There, the complaint alleges that for over fifty years, Northrup (and its predecessor) owned and operated (until 1996) manufacturing facilities in Bethpage, New York. *Id.,* at *4-8. In connection with these operations, Northrop used, stored, and disposed of various materials including TCE. *Id.* Despite remediation efforts, contaminants such as TCE spread into the aquifer. *Id.* The result is "[T]here is a large plume of groundwater contaminants, including TCE, in the Bethpage Area extending beyond the boundaries of the Site, impacting more than 2,000 acres, including Plaintiffs' and Class Members' property." *Id.* As noted in the complaint, "This continues to this day." *Id.* CERCLA issues also appear to be involved in *Romano* as well. *Id.* at *22-23.

Despite the similarities between *Romano* and this action, Northrop does not appear to have filed a motion to strike there; rather, it is currently involved in expert discovery for the class certification process (e.g., Northrop's depositions of plaintiffs' class certification experts will be completed by March 4, 2022, etc.). Since Northrop allowed *Romano* to proceed through class certification, that emphasizes discovery is needed here as well.

### b. Defendants' motion is premature

Although a court may "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter" (Fed. R. Civ. P. 12(f)), striking a party's pleading is "an extreme and disfavored measure." *Legacy Gymnastics, LLC v. Arch Ins. Co.*, No. 2:20-cv-04214-NKL, 2021 U.S. Dist. LEXIS 108242, at *4-5 (W.D. Mo. June 9, 2021) *citing BJC Health*

*Sys. v. Columbia Cas. Co.*, 478 F.3d 908, 917 (8th Cir. 2007) (citation omitted). Along these lines, striking class allegations prior to discovery and the class certification stage "is a rare remedy 'because it is seldom, if ever, possible to resolve class representation question[s] from the pleadings alone.'" *Id. citing Courtright v. O'Reilly Auto. Stores, Inc.*, 2014 U.S. Dist. LEXIS 201074, 2014 WL 12623695, at *2 (W.D. Mo. July 7, 2014); *Stanbury Law Firm v. Internal Revenue Serv.*, 221 F.3d 1059, 1063 (8th Cir. 2000) (holding that striking allegations is an "extreme measure" and is necessarily infrequently granted); *Nobles v. State Farm Mut. Auto. Ins. Co.*, 2012 U.S. Dist. LEXIS 132318, 2012 WL 4090347, at *2 (W.D. Mo. Sept. 17, 2012) (collecting cases and concluding that "[t]he weight of authority indicates that courts should meet motions to dismiss class allegations at the 12(b)(6) stage with a great deal of skepticism"); *Pennington v. BHP Billiton Petroleum (Fayetteville) LLC,* No. 4:20-cv-00178-LPR, 2021 U.S. Dist. LEXIS 69888, at *25 (E.D. Ark. Apr. 12, 2021)("While Federal Rule of Civil Procedure 23 requires a court to decide whether it will certify a class '[a]t an early practicable time,' the 'propriety of class action status can seldom be determined on the basis of pleadings alone.'").

This action is not the "rare" case where such an "extreme measure" is required. Here, given the early timing of this action, there is not a sufficient factual record before the Court to conduct the rigorous analysis required by Rule 23 or address the factual issues raised by Defendants in their motion. Discovery here has only just begun and Plaintiffs' motion for class certification is not due until Dec. 5, 2022. Plaintiffs then should be allowed the opportunity to present its class certification motion after discovery has been completed.

    c. **Defendants bear a high burden of proof**

When it comes to determining whether a class action should be certified, it is typically the plaintiffs that move the court to certify a class under Rule 23, in which instance they bear the

3

burden of proof. However, when defendants move to strike class allegations, they bear the burden of establishing the complaint fails to meet the requirements for maintaining a class action. *Legacy Gymnastics,* 2021 U.S. Dist. LEXIS 108242, at *4-5. *d.* citing *Doyel v. McDonald's Corp.,* 2009 U.S. Dist. LEXIS 9622, 2009 WL 350627, at *5 (E.D. Mo. Feb. 10, 2009); *Sherrard v. Boeing Co.,* No. 4:13-CV-1015 (CEJ), 2013 U.S. Dist. LEXIS 154125, at *8 (E.D. Mo. Oct. 28, 2013)("It is a rare case in which it is clear from the pleadings that the plaintiffs may not proceed as a class…."). Any doubts on whether the class action requirements will be met must be construed in favor of the plaintiff. *Id.,* citing *Walker v. World Tire Corp., Inc.*, 563 F.2d 918, 921 (8th Cir. 1977). The standard then is the same that is applied when deciding a motion to dismiss under Rule 12(b)(6). *Sherrard,* 2013 U.S. Dist. LEXIS 154125, at *7. In other words, "the question is whether plaintiffs' allegations are sufficient to show that it is plausible that plaintiffs will be able to satisfy the Rule 23 requirements *after conducting discovery*." *Id.* (emphasis added). To restate, here, Plaintiffs do not need to prove their claims meet every element for certification; to the contrary, Northrop must prove Plaintiffs cannot meet their burden *and* that there is no set of facts available which could later allow them to do so.

### d. Defendants' challenge fails on the merits

To obtain class certification, and in the context of a class certification motion, Plaintiffs must show:

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). In addition to satisfying Rule 23(a)'s requirements of numerosity, commonality, typicality, and adequate representation, the proposed class must also meet at least one of the three requirements listed in Rule 23(b).

Northrop, despite having the burden, does not challenge Plaintiffs' class claims under Rule 23(a). Docket 27-1 at p. 10 of 22 ("Setting aside Rule 23(a), Plaintiffs' inability to satisfy any of the Rule 23(b) subsections is dispositive."). Northrop therefore tacitly concedes that the class is so numerous that joinder of all members is impracticable, that there are common questions of law or fact common to the class, that the claims of the representative parties are typical of the claims of the class, and that the representative parties will fairly and adequately protect the interests of the class.

Northrop's challenge instead focuses solely on Rule 23(b).

Rule 23(b)(3) requires the Court to find "that the questions of law or fact common to class members predominate over any questions affecting only individual members" and that the class action is "superior to other available methods" to adjudicate the controversy fairly and efficiently. Fed. R. Civ. P. 23(b)(3). The predominance inquiry "asks whether the common, aggregation-enabling issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Lipari-Williams v. Mo. Gaming Co*., 339 F.R.D. 515, 528 (W.D. Mo. 2021) *citing Orduno v. Pietrzak,* 932 F.3d 710, 716 (8th Cir. 2019) (citations and quotation marks omitted).

In the context of moving for certification (where the burden is flipped from the instant motion), to satisfy the predominance requirement, a plaintiff must establish that class action issues are subject to generalized proof, and thus applicable to the class as a whole and that these issues predominate over issues that are subject only to individualized proof. *Id.* Merely because

5

individual inquiries may remain, that in and of itself would not necessarily dictate the conclusion that a class action is impermissible if common issues predominate. See, e.g., *Lipari-Williams,* 339 F.R.D. at 528 ("Any individualized inquiries do not override the predominate commonality of the class-wide documents Defendant distributed and/or made available to all participants."). Here, where the Defendants have the burden, the touchstone for striking class allegations at this stage would be facial deficiency.

Plaintiffs' proposed classes meet the predominance requirements because there are questions of fact and law common to the class(es) which predominate over any questions that may affect only individual members. Addressing just a few of the common questions raised in the Amended Complaint shows common questions predominate.

1. **Factors such as "Whether TCE spread from the confines of the Contamination Site" and "Whether the TCE spread from the Contamination Site constitutes an additional threat of exposure to chemical and/or industrial waste beyond the proximity of the Contamination Site"**

The common facts pled in this case show 1) large quantities of TCE were dumped illegally at the Northrop Site,[1] 2) TCE contamination still remains at the Site,[2] 3) TCE spread from the Site and contaminated the Springfield and Ozark aquifers,[3] 4) the Springfield and Ozark

---

[1] See, e.g., Northrop's "Technical Update and Conceptual Path Forward", Ex. 1 to Amended Complaint at 77 of 97 (slide entitled "What we know" with statement "TCE was discharged at the OAP, Sanitary Lagoon, NAP, and Sub-Floor Areas").
[2] *Id.* at 77 of 97 ("VOCs remain in saturated clays and fractured bedrock"); *Id.* at 82 of 97 "TCE is present in the groundwater on the Site in the Roubidoux Formation").
[3] See, e.g., *Id.* at 75 of 97 (Slide entitled "What we know" with statements that 1) "TCE is present on the Site in the Springfield and Ozark aquifers," 2) "TCE is present on the airport in the Springfield and Ozark aquifers," 3) "TCE is present in domestic wells to the North, East, and South of the site," and 4) "TCE is present in springs to the North and East of the site."); *Id.* at 46 of 97 (Dye Study Map); *Id.* at 80 of 97 ("TCE is present in soil vapor to the west of the Site"; "TCE is present in soil vapor and 'cave air' at Fantastic Caverns"); *Id.* at 82 of 97 ("Very productive groundwater flow zones are present on the Site in the Roubidoux and Upper Glasconade Formations –600 to 850 feet bgs"); see also Ex. 2 to Amended Complaint ("Cross Section Through Litton Site" showing TCE plume in Springfield and Ozark aquifers).

6

aquifers are the sources of water for wells in Springfield,[4] 5) TCE contamination at the site will not be contained any time soon,[5] 6) MDNR designated a 21-square-mile, TCE-at-risk zone around the site where it tests wells for TCE contamination for free,[6] and 7) Northrop was aware that TCE had contaminated private wells beyond the Site at least as early as 2004 yet hid this information from the public for over a decade.[7] All these issues are proven through generalized proof and show common issues predominate any alleged individualized issues.

Further, just the fact MDNR designated a 21-square-mile, TCE-at-risk zone has a negative effect on property values. Should anyone within this zone wish to sell their property, they would need to disclose the TCE risk. Informing potential buyers of this zone negatively affects the value of Plaintiffs' and the Classes' property.

While Defendants contend the amount of damages may vary, that by itself is insufficient to deny a class. *Stuart v. State Farm Fire & Cas. Co.,* 910 F.3d 371, 376 (8th Cir. 2018) (differing amounts of damages "is not sufficient to overcome the district court's findings of predominance and superiority"); *see also Lockwood Motors, Inc. v. Gen. Motors Corp.,* 162

---

Northrop's documents then show TCE from the site spread in all four compass directions, as well as providing one method of delivery (the aquifers). See also Ex. I, 12/26/2002 DNR letter ("DNR sent Defendants a letter referring to its "grave concerns" that the TCE Contamination Site was "a contributing source of the VOCs found in Big Williams Spring and the Little Sac River at Fantastic Spring.")

[4] See, e.g., Ex. A to Amended Complaint at 43 of 97.
[5] *Id.* at 83 of 97 ("It is technically infeasible to hydraulically capture contaminant mass in the karts system under dynamic flow conditions")
[6] DN20, ¶¶53-55.
[7] "DNR official at public forum: 'I apologize' for how Missouri handled TCE pollution," Springfield News-Leader (2019) from https://www.news-leader.com/story/news/local/ozarks/2019/03/15/springfield-greene-county-pollution-dnr-tce-litton-systems/3133068002/ (last viewed June 4, 2021)("For those people for whom this came as a surprise, especially for those who had TCE in their (water) wells and didn't know it, I apologize," Galbraith said. "We didn't tell people about it in a timely manner. We're here in part to make amends.")

F.R.D. 569, 582 (D. Minn. 1995) ("Courts routinely find Rule 23(b)(3)'s predominance requirement satisfied despite the need for individualized damage determinations when the 'fact' of injury is common."). The relevant consideration is the *fact* of damages, and, as described above, common evidence shows all class members were injured.

2. **When did Defendants become aware that TCE had spread from the Site**

Northrop's silence confirms it was not until 2018-2019 that it disclosed TCE had spread from its Site despite its prior knowledge. There are no individualized issues regarding Northrop's failure to warn because all evidence for this issue arises from one source: Northrop.

3. **The scope of the duties owed by Defendants to those who now have TCE contamination on their properties, including, but not limited to, a duty to warn of the spread of TCE**

Plaintiffs contend Northrop owed a duty to warn in at least 2004 (when Northrop learned of the TCE spread from its Site). Had Northrop done so, Springfield well owners could have tested their wells and determined if they were drinking, cooking with, and bathing in TCE contaminated water. The fact Northrop withheld disclosure predominates any potential individualized issues. See, e.g., *Lipari-Williams,* 339 F.R.D. at 528 ("Any individualized inquiries do not override the predominate commonality of the class-wide documents Defendant distributed and/or made available to all participants.").

4. **Whether the relief of medical monitoring is appropriate**

Due solely to Northrop's silence, homeowners and tenants in Springfield used their well water for drinking, cooking, and bathing *for years* without knowledge of the dangers of TCE. Keeping in mind that the EPA limit of 5 ppb is for a single exposure, Northrop's failure to warn subjected Springfield homeowners and tenants to years of daily exposures. Even for wells that might now test below 5 ppb, years of repeated exposures—at higher levels—are harmful. All of

this could have been avoided had Northrop simply warned the community. It chose not to, and instead in essence conducted a large-scale experiment on how long-term exposure of a community to TCE would affect their health. The only way to determine the results of Northrop's experiment is by medical monitoring. Again, there are no individualized issues here because it was Northrop's decision to allow the community to repeatedly poison itself for years that requires medical monitoring.

### 5. Whether punitive damages are proper

Finally, whether punitive damages are required will be subject to common proof and not require individualized issues because the sole focus of discovery will be on Northrop. It is unrebutted that Northrop refused to warn the public about private well contamination in 2004. This was not just a single decision; Northrop made this decision daily until 2018-2019. This common evidence predominates any individualized issues.

Further, Northrop's flippant attitude towards the spread of TCE from its Site is already shown in common evidence. For example, in its 2020 "Technical Update and Conceptual Path Forward" presentation, Northrop callously inserted comic strips showing a complete disregard for the public. For example, in a slide entitled "Is this a CSM?" (meaning "Is this a Conceptual Site Model"), Northrop inserted a Calvin & Hobbes comic strip which joked about the meaningless of models. *Id.,* Docket 20-1 at p. 39 of 97 ("I hate this model. Nothing fit right, the instructions were incomprehensible."; "I can't think of an afternoon I've enjoyed less. What a waste. What a dumb hobby" and "Of course with this for practice I'll bet we could do great on *another* model!" (italics in original)). Worse, within the same presentation, a comic strip joked, "We usually do our long-range planning at the last minute" while another touted, "We picked option C by applying the Eeniemeeniemineymo™ methodology" followed by "As long as it

9

wasn't based just on your gut." *Id.* at 85, p, 94 of 97. For a presentation that included devastating statements for the Springfield community such as "It is technically infeasible to hydraulically capture contaminant mass in the karts system under dynamic flow conditions" and numerous slides highlighting gaps in Northrop's knowledge in many areas, such an unprofessional attitude exemplifies its disregard for Springfield well owners. *Id.* at pp. 83, 87-92 of 97. And as these materials are relevant to all class members, the same evidence will be used by each, showing common issues predominate.

  e. **Northrop's arguments fail**

  For all intents and purposes, Northrop contends that *Ebert v. General Mills, Inc.,* 823 F.3d 472 (8th Cir. 2016) stands for the premise that *all* cases involving TCE inherently present individualized issues not amenable to class-wide adjudication. In other words, when it comes to TCE, there is no factual record that would ever support certification of a class. This is an incorrect reading of *Ebert*.

  First, *Ebert* did not address a motion to strike; rather, it involved a full-evidentiary record on appeal. In view of this, the burdens of the parties were different. For that reason alone, *Ebert* does not support Northrop. See, e.g., *Mason v. AshBritt, Inc.,* No. 19-cv-01062-DMR, 2020 U.S. Dist. LEXIS 27333, at *25-26 (N.D. Cal. Feb. 17, 2020)(Commenting in view of *Ebert* and similar cases "These cases may illustrate the difficulty of certifying classes such as the ones that Plaintiffs propose here, but they do not suggest that the court should address this issue on a motion to strike. To the extent that Defendants seek a pronouncement that property contamination and trespass cases are inherently unsuitable for class treatment, the court declines to adopt such a sweeping proposition.")

Second, *Ebert* differs significantly from the instant action. While the instant action focuses on admitted and confirmed TCE contamination of Springfield's aquifers due to Northrop's site, *Ebert* focused on TCE in "breathable air" which the facts developed during discovery showed "its presence and effect differ by property." *Id.* at 479. The Eighth Circuit also reasoned that because of this, adjudicating liability would require "a determination as to whether vapor contamination, *if any*, threatens or exists on each individual property." *Id.* (emphasis added). Because of this, *Ebert* does not make broad proclamations about all TCE cases, including actions involving TCE contaminated aquifers, or, most importantly, Defendants' failure for over a decade to inform the public of the risks to health and property it had caused.

Unlike *Ebert,* as explained above generalized proof (e.g., Northrop's materials) confirm that TCE from the Site (the source) contaminated Springfield's aquifers (confirmation of contamination) from which the putative class's wells derive their water. *See,* notes 1-5, supra. The individualized issues raised by the Eighth Circuit in *Ebert* are subject to generalized proof in this action. There are no individualized issues for "sources of contamination"; the generalized proof (from Northrop and MDNR) described in the Amended Complaint confirms the source of contamination is the Site for all class members. The generalized proof from Northrop and MDNR then shows "actual contamination" and not just "mere 'fear of contamination spreading'" as Northrop contends. Docket No.27 at p. 13 of 22. There also is no need to review "whether unique conditions and features of the property create the potential for vapor intrusion," because this action focuses on TCE in well water and generalized proof shows both aquifers from which well water is drawn are contaminated by TCE from Northrop's site. For the same reason, there are no individualized issues as to "whether (and to what extent) the groundwater beneath a property is contaminated," because Northrop's documents (again, generalized proof) confirm the

11

fact of TCE contamination as well as the fact MDNR's 21-sqaure-mile, TCE-at-risk zone negatively affects property values. Further, there are no individualized issues when it comes to "whether mitigation has occurred at the property," because here "mitigation" on the property would still negatively affect property value because mitigation shows TCE levels of concern exist in the aquifers below the property. Finally, "whether each individual plaintiff acquired the property prior to or after the alleged diminution in value" does not appear here as Northrop hid its knowledge of TCE contamination from the Site for over a decade until at least 2018-2019.[8] And most importantly, generalized proof shows how long (and why) Northrop hid the dangers of contamination from the public.

Additionally, the holding in *Ebert* focused only on "causation and damages." *Ebert,* 823 F.3d at 480 ("Although there may be common matters in this litigation that can be decided on a class-wide basis, we think it is clear that individual issues predominate the analysis *of causation and damages* that must be litigated to resolve the plaintiffs' claims." (emphasis added)). As Defendants' motion focuses on issues beyond causation and damages, *Ebert* does not support their claim. See, e.g., Docket No. 27-1 at p. 11 of 22 ("…will require an individualized inquiry into their alleged damages, causation, *and possible defenses*." (emphasis added)).

Along these lines, while Northrop's statute of limitations affirmative defense is premature, common proof would rebut such a defense. Again, Northrop screened the spread of TCE from the Site from the public, and the materials that would rebut this defense (identifying when Northrop finally warned the public) would arise from Northrop. Further, Northrop's argument about the classes' alleged knowledge of contamination at the time of purchase is a red

---

[8] Worst-case scenario, and after discovery, the class definitions can be adjusted to focus on specific years (such as 2001-2019…if necessary).

herring; the Amended Complaint alleges, and Northrop does not contest, Northrop hid knowledge of TCE contamination from the community from at least 2004 until 2018-2019.

Finally, *Ebert* addressed a liability-only class; not issue classes. As the Sixth Circuit held:

> But predominance problems within a liability-only class do not automatically translate into predominance problems within an issue class, and Defendants fail to explain why *Ebert* extends to issue-only classes.

*Martin v. Behr Dayton Thermal Prods. LLC,* 896 F.3d 405, 415 (6th Cir. 2018). Again, this is why discovery is necessary for this action: to determine if an all-encompassing class action is proper, or whether smaller, issues classes would be proper.

### f. Plaintiffs' medical monitoring claims are proper

Plaintiffs' proposed medical monitoring relief is also supported by common evidence that predominates over any individualized issues. Due solely to Northrop's failure to warn, Plaintiffs and the Classes were repeatedly exposed to carcinogens for over a decade. Northrop could have prevented the entire situation from happening or stopped it at any time; Northrop chose not to.

The state of Missouri has allowed cases with putative medical monitoring classes such as this to proceed. See, e.g., *Meyer v. Fluor Corp.*, 220 S.W.3d 712, 714 (Mo. 2007). In *Meyer,* the Defendants were involved with the operation of the Doe Run lead smelter in Herculaneum which emitted large quantities of lead into the local environment. *Id.* at 714-715. The action alleged that this resulted in higher levels of lead (and other toxins) than would otherwise be present. *Id.* While the circuit court found common issues did not predominate over individualized issues, the Missouri Supreme Court reversed reasoning that "[i]t is the common fact of exposure to a set of toxins from a single source that is the common and overriding issue in Plaintiff's case" and "[t]he significance and extent of toxic exposure is primarily an issue of common proof." *Id.* at 719. The *Meyer* court thus held, "Under this theory of liability, the individual factors identified

by the circuit court are not particularly relevant because the need for monitoring is based on a common threshold of exposure."

The similarities between *Meyer* and the instant action show Defendants' motion to strike should be denied. Both cases involved toxins from a single source that were introduced into a community. And therefore, like *Meyer,* this action should be allowed to proceed.

Defendants' arguments do not require a different result. Northrop basically argues that medical monitoring is never appropriate as a class in Missouri in view of *Grovatt v. St. Jude Med. Inc. (In re St. Jude Med., Inc.)*, 425 F.3d 1116 (8th Cir. 2005). This, however, is an overly broad reading of a non-analogous case. First, and again like *Ebert*, *In re St. Jude Med.,* had a full evidentiary record developed. Second, the subject matter of *In re St. Jude Med.* focused not on environmental contamination, but on heart valves implanted into individuals. *Id.* There, the evidence developed during discovery raised a number of potential individualized issues to consider not present here including: 1) every patient implanted with a mechanical heart valve already required future medical monitoring as an ordinary part of his or her follow-up care, and whether additional monitoring was required would depend on 2) that patient's medical history, 3) the condition of the patient's heart valves at the time of implantation, 3) the patient's risk factors for heart valve complications, 4) the patient's general health, 5) the patient's personal choice, and 6) other factors. *Id.* at 1122. To the contrary, here the common factor that predominates over any individualized factor is that the proposed class was exposed to carcinogens from Northrop's Site for over a decade solely because Northrop hid information from the community, and for that reason alone, the classes should be checked regularly by medical professionals.

As can be seen then, *In re St. Jude* does not block medical monitoring claims in Missouri, especially at this early stage. Northrop's motion in this regard should be denied.

### g. Defendants' raising of Rule 23(b)(1) and 23(b)(2) is premature

Defendants' also preemptively move to strike Rule 23(b)(1) and 23(b)(2) classes, despite the fact such classes have not been proposed by Plaintiffs. Such a motion is obviously premature. At this time, Plaintiffs only believe a Rule 23(b)(3) class would be appropriate. However, discovery has only just begun. Should during discovery the need for a Rule 23(b)(1) or 23(b)(2) class arise, Plaintiffs should be able to raise them. Defendants' motion in this regard seeks an advisory opinion and therefore should be denied.

### h. Should Defendants succeed, the proper remedy would be to allow Plaintiffs to amend

If the Court finds in the Defendants' favor on this motion in any aspect, the appropriate remedy would be to allow the Plaintiffs to amend the complaint to provide further evidence or refine the class definition. In cases where class claims have been stricken, amendment has been allowed. *See, e.g., Colley v. P&G*, No. 1:16-cv-918, 2016 U.S. Dist. LEXIS 137725, at *43 (S.D. Ohio Oct. 4, 2016. With the inferences arising from the Amended Complaint, this is not an instance where no amount of discovery or time would allow for Plaintiffs to resolve any alleged deficiencies in class definitions under Rule 23.  Therefore, should Defendants succeed on this motion, Plaintiffs should be allowed to amend.

### III. Conclusion

In view of the above, Defendants fail to meet their burden, and their motion should be denied.


Dated: February 8, 2022	Respectfully submitted,

PEIFFER WOLF CARR KANE
CONWAY & WISE LLP

By: */s/Paul A. Lesko*
Paul A. Lesko – MO #51914
Brandon M. Wise – MO #67242
Peiffer Wolf Carr Kane & Conway LLP
818 Lafayette Ave., Floor 2
St. Louis, MO 63104
Ph: (314) 833-2826
E: plesko@peifferwolf.com
E: bwise@peifferwolf.com

**CERTIFICATE OF SERVICE**

I hereby certify that on February 8, 2022, the foregoing document was served upon all counsel of record through the Court's ECF system.

*/s/ Paul A. Lesko*